UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES JERROD SPIKES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-3004** |
| **RANDY SEAL, ET AL.** | **SECTION: "R"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, James Jerrod Spikes, a state inmate and frequent litigant in this Court,[1] filed the instant *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. He sued the following defendants: Washington Parish Sheriff Randy Seal; Warden Jim Miller and former Warden Robert McDaniels of the Washington Parish Jail; Warden Jeff Windham and Assistant Warden David Smith of the Lasalle Correctional Center; and former Assistant District Attorney Leanne Wahl.

In order to better understand the nature and factual bases of plaintiff's claims, the Court held a Spears hearing on April 16, 2015. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement, and a plaintiff's testimony at such a hearing becomes a part of the total filing by the *pro se* applicant. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

---

[1] In addition to this action and his former lawsuits, plaintiff's pending civil actions include Spikes v. Williams, Civ. Action No. 14-1895 c/w 14-2839, and Spikes v. Seal, Civ. Action No. 14-2246.

Based on the complaint, broadly construed,[2] and plaintiff's testimony at the Spears hearing, the Court finds that plaintiff is making the following allegations in this lawsuit:

On or about January 16, 2014, Warden Jim Miller and two deputies entered plaintiff's cell at the Washington Parish Jail ("WPJ") with a dog at approximately 3:00 a.m. Plaintiff was asleep at the time; however, he awoke as his foot was being bitten by the dog. He was then placed in lockdown and received no medical treatment for the bite other than an "alcohol pad" off of the "pill cart." He was transferred to the Lasalle Correctional Center ("LCC") later that same day, and he was then seen by a nurse at LCC the following day. The nurse again treated the bite with alcohol. At the Spears hearing, plaintiff stated that he received no other treatment for the bite, but he acknowledged that the bite nevertheless healed.

In his complaint, plaintiff claims that he was falsely imprisoned at WPJ and LCC. He alleges that, while he was at LCC, he overheard Warden Jeff Windham and Assistant Warden David Smith say that WPJ officials wanted plaintiff held "for about a year so they could scourge [him] and then release [him]." He further alleges that he also overheard Sergeant Luke Windham tell a deputy that plaintiff's criminal charge(s) had been dropped. However, at the Spears hearing, plaintiff conceded that he was placed in WPJ and LCC as a pretrial detainee awaiting trial on a charge of attempted first-degree murder. He further stated that the criminal charge remains pending and serves as the basis for his current detention at the Concordia Parish Correctional Facility.

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

2

Lastly, plaintiff alleges that Assistant District Attorney Leanne Wahl conspired with LCC officials to deny him access to the jail's law library. At the <u>Spears</u> hearing, he acknowledged that a public defender has been appointed to represent him in his state criminal proceedings.

## I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[3] Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or

---

[3] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

>   (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint is malicious if the plaintiff is asserting against the same or different defendants virtually identical causes of action "arising from the same series of events and alleging many of the same facts as an earlier suit." Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988). "When declaring that a successive in forma pauperis suit is 'malicious' the court should insure that the plaintiff obtains one bite at the litigation apple – but not more." Pittman v. Moore, 980 F.2d 994, 995 (5th Cir. 1993).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

4

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint and fully considering his Spears hearing testimony, the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous, malicious, and/or for failing to state a claim on which relief may be granted.

## II. Plaintiff's Claims

### A. Dog Bite

To the extent that plaintiff is asserting a claim based on the fact that he was bitten by the dog at WPJ, that claim should be dismissed for the following reasons.

First, it appears that plaintiff is seeking to hold Sheriff Seal vicariously liable for bite. However, plaintiff previously asserted this same claim against Seal in Spikes v. Seal, Civ. Action No. 14-2246 (E.D. La.). Therefore, this duplicate claim is obviously subject to dismissal as "malicious." Bailey v. Johnson, 846 F.2d 1019 (5th Cir. 1988).

Second, in any event, as noted in the Report and Recommendation issued in Civ. Action No. 14-2246, the claim is also subject to dismissal on the grounds that Seal simply may not be held liable pursuant to § 1983 under any theory of vicarious liability. See, e.g., Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of

subordinates on any theory of vicarious liability."); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

Third, plaintiff has named no other defendant with respect to this claim. Nevertheless, even if he had, there is no basis for liability under 42 U.S.C. § 1983. Plaintiff does not allege that anyone ordered the dog to attack him; rather, he alleges only that the dog handler failed to keep control of the animal. However, a § 1983 claim cannot be based on negligence resulting in an accidental dog bite. Cochran v. City of Deer Park, Texas, 108 Fed. App'x 129 (5th Cir. 2004).

### B. Medical Care

To the extent that plaintiff is also asserting a claim that he was denied adequate medical care for the dog bite, that claim likewise fails. The law applicable to such a claim is clear. Specifically, regardless of whether an inmate is a pretrial detainee or a convicted prisoner, his federal constitutional right to medical care is violated *only* if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Here, plaintiff has not alleged that his wound from the bite was more than superficial. Moreover, even if the Court assumes that the dog bite constituted a "serious medical need," plaintiff cannot establish that the defendants acted with deliberate indifference for the following reasons.

Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has observed:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, plaintiff was not in fact denied treatment as he initially alleged; rather, at the Spears hearing, he conceded that the bite was immediately treated with an "alcohol pad" at WPJ and then again treated with alcohol by a nurse at LCC the following day. The fact that plaintiff apparently believes that more should have been done for him is of no moment. Absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert, 463 F.3d at 346. And, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in

7

federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

The foregoing conclusion also is not changed by the fact that plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or medical malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problem persisted despite

treatment, or whether he was dissatisfied with his care; rather, it is only whether he had a serious medical need which was met with deliberate indifference. He did not. Accordingly, his medical claim should be dismissed.

## C.  False Imprisonment

Plaintiff's next claim is that there was no basis for his detention at the Washington Parish Jail and the Lasalle Correctional Center. That, however, is simply untrue. Plaintiff testified at the Spears hearing that his detention at those two facilities was based on the fact that he had been charged with attempted first-degree murder, a charge that currently remains pending. Because plaintiff had not posted bail, his detention for an ongoing state criminal prosecution for attempted first-degree murder was not unconstitutional, and any claim that he is "falsely imprisoned" is patently frivolous.[4]

## D.  Denial of Access to Law Library

Lastly, plaintiff claims that he was denied access to the LCC's law library. It is clear that inmates have a constitutional right of meaningful access to the courts which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). The right extends to pretrial detainees. See United

---

[4] Further, in any event, even if there were some basis for a "false imprisonment" claim, he waited too long to bring such a claim. Any claim for false imprisonment accrued when plaintiff became detained pursuant to legal process, such as arraignment, and he thereafter had only **one year** in which to assert that claim. See, e.g., Smith v. Humphrey, 540 Fed. App'x 348 (5th Cir. 2013). At the Spears hearing, plaintiff indicated that his criminal prosecution for attempted first-degree murder has been ongoing since **August** of **2013**; therefore, any "false imprisonment" claim was already prescribed when this lawsuit was filed in **December** of **2014**.

States v. Moya-Gomez, 860 F.2d 706, 743 (7th Cir. 1988); Wetzel v. Strain, Civ. Action No. 09-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010); Kirkpatrick v. Daugherty, Civil Action No. 6:05cv461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006). However, pretrial detainees are often in a different situation, in that they normally have appointed counsel representing them with respect to their pending criminal charges. The appointment of such counsel satisfies the detainee's right of access to courts for his criminal proceedings; in those circumstances, he is not additionally entitled to independent access to a law library and legal support. See, e.g., Dickinson v. TX, Fort Bend County, 325 Fed. App'x 389, 390 (5th Cir. 2009) ("Because Dickinson had court-appointed counsel to represent him, he did not have a constitutional right of access to a law library to prepare his criminal defense."); Ashcraft v. Cameron County, No. 97-41219, 1998 WL 611201, at *3 (5th Cir. Aug. 17, 1998) ("A criminal defendant cannot complain that he was denied access to the courts while represented by counsel."); Ford v. Foti, No. 94-30614, 1995 WL 241811, at *3 (5th Cir. Apr. 14, 1995) ("A criminal defendant who is represented by counsel has meaningful access to the courts vis-a-vis the criminal action pending against him."); Childs v. Scott, No. 94-60723, 1995 WL 153057 (5th Cir. Mar. 22, 1995) ("If a criminal defendant is represented by counsel, he has constitutionally sufficient access to the courts."); Webb v. Havins, No. 93-1452, 1994 WL 286151, at *3 (5th Cir. June 13, 1994); Crockett v. Carpenter, No. 93-1480, 1994 WL 144645, at *3 (5th Cir. Apr. 5, 1994).

As noted, plaintiff testified at the Spears hearing that he was appointed a public defender to represent him in the state criminal proceedings. As a result, there has been no violation of his right of access to the courts. This is true even if he wanted to perform his own legal research to assist his

counsel, because the right at issue simply does not extend that far. See, e.g., Caraballo v. Federal Bureau of Prisons, 124 Fed. App'x 284, 285 (5th Cir. 2005) ("Caraballo also asserts that he was denied meaningful access to the courts because he was unable to assist his attorney during his direct appeal by conducting legal research. Because Caraballo had court-appointed counsel on appeal, he had no constitutional right of access to a law library in preparing his defense, and Caraballo failed to state a claim for which relief may be granted."); Boyd v. Nowack, Civ. Action No. 09-7639, 2010 WL 892995, at *3 (E.D. La. Mar. 11, 2010) ("Because plaintiff is currently represented, he has no valid access-to-courts claim with respect to his criminal proceeding, even if he would like to 'assist' his attorney."); cf. Prather v. Anderson, No. Civ. A. H-05-2964, 2005 WL 2277528, at *2 (S.D. Tex. Aug. 31, 2005) ("It is well established ... that a criminal defendant has no constitutional right to hybrid representation ....").

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous, malicious, and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[5]

New Orleans, Louisiana, this twentieth day of April, 2015.

                                                     **SALLY SHUSHAN**
                                                     **UNITED STATES MAGISTRATE JUDGE**

---

[5] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.